**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION**

| | | |
|---|---|---|
| CLAUDIA CROFT, | ) | |
| an Individual,  and | ) | |
| SHEER DELIGHT, INC., | ) | |
| a Florida Corporation, | ) | Case No.        09-cv-01370 |
| Plaintiffs, | ) | |
| | ) | Judge: James D. Whittemore |
| v. | ) | |
| | ) | |
| JEANETTE M. LEWIS. | ) | |
| an Individual, resident of Arizona, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant JEANETTE M. LEWIS (hereinafter "Mrs. Lewis"), by and through its counsel

Rosenbaum & Silvert, P.C., hereby moves under Fed. R. Civ. P. 12(b)(2) to dismiss Plaintiff's

Complaint for lack of personal jurisdiction as its responsive pleading to the Complaint.

## I.     INTRODUCTION

The Court should dismiss the Complaint of Plaintiffs Claudia Croft and Sheer Delight,

Inc. (hereinafter "Plaintiffs") for patent and trademark infringement because Plaintiffs are unable

to affirmatively support the Complaint's conclusory jurisdictional allegations and therefore

cannot establish personal jurisdiction over Mrs. Lewis.  Mrs. Lewis, who is an Arizona citizen,

has transacted no substantial business in Florida and does not purposefully direct her activities at

Florida residents.  Accordingly, Mrs. Lewis does not have sufficient connection with Florida

necessary to support the exercise of personal jurisdiction.  The Declaration of Mrs. Lewis

(hereinafter "Lewis Dec."), attached herewith, demonstrates that Mrs. Lewis does not have

minimum contacts with Florida.  Even if Plaintiffs were able to establish the facts necessary to

confer jurisdiction, the exercise of jurisdiction over Mrs. Lewis by this Court would offend traditional notions of fair play and substantial justice and thereby violate Mrs. Lewis's Constitutional right to Due Process.

**II.   FACTS**

    A.  <u>Background</u>

Mrs. Lewis is an individual residing in Arizona.  Lewis Dec. ¶1.  The Complaint instantly alleges, under the heading "Jurisdiction and Venue," that the District Court for the Middle District of Florida has jurisdiction over this action merely because it involves "claims arising under the United States Patent Act of 1952, as amended, and 35 U.S.C. §271 *et seq*."  Complaint at ¶ 5.  The Complaint goes on to allege that venue is proper in the Middle District of Florida solely because Mrs. Lewis's website, <u>www.underthehoode.com</u> (hereinafter "the website"), is accessible within the Middle District of Florida.  Complaint at ¶ 6.  The Complaint alleges both patent infringement and trademark infringement.  Specifically, Plaintiffs allege that Mrs. Lewis makes, uses, or offers for sale through her website body jewelry that infringes U.S. Patent No. 6,758,061 (the '061 patent).  Complaint at ¶ 8-11.  Plaintiffs also allege that Mrs. Lewis uses Plaintiffs' registered trademark NIPPLE HUGGER on her website in connection with the type of goods for which the trademark is registered.  Complaint at ¶ 16.  According to the Complaint, such conduct constitutes acts of patent and trademark infringement occurring in the Middle District of Florida and thereby gives rise to jurisdiction over Mrs. Lewis.  Complaint at ¶ 5.  As discussed more fully herein, the erroneous and conclusory assertions in the Complaint do not make out a prima facie case of jurisdiction and, in any event, are squarely refuted by the Declaration of Mrs. Lewis.  Plaintiffs cannot meet their burden of producing facts sufficient to establish personal jurisdiction over Mrs. Lewis.

### B.  Mrs. Lewis's Lack of Contacts With Florida

As set forth in the Declaration of Mrs. Lewis, it is clear that Mrs. Lewis does not have sufficient contacts within the state of Florida to give rise to personal jurisdiction:

- Mrs. Lewis is a resident of Arizona and founder of the business operated by the website www.UnderTheHoode.com (hereinafter "UnderTheHoode.com").  Lewis Dec. ¶1.

- Mrs. Lewis, as sole representative of UnderTheHoode.com, does not have a facility, branch office or other place of business in Florida and never has been licensed to do business in Florida.  Lewis Dec. ¶2.

- Mrs. Lewis, as sole representative of UnderTheHoode.com, does not have employees or agents in Florida and Mrs. Lewis has never had a joint venture or other relationship with enterprises in Florida.  Lewis Dec. ¶3.

- Mrs. Lewis, as sole representative of UnderTheHoode.com, has not held any meetings with clients in Florida.  Lewis Dec. ¶5.

- Mrs. Lewis, as sole representative of UnderTheHoode.com, does not have, and never has had, any bank accounts or other tangible or real property in Florida, and Mrs. Lewis has never warehoused or stored any inventory or supplies in Florida.  Lewis Dec. ¶6.

- Mrs. Lewis, as sole representative of UnderTheHoode.com, has not sought to be qualified to do business in Florida and is not required to pay income or franchise taxes in the state.  Lewis Dec. ¶7.

- Mrs. Lewis, as sole representative of UnderTheHoode.com, does not advertise in Florida via television, newspaper, print, or radio, nor is any advertising on

UnderTheHoode.com directed specifically at Florida or contained in publications directed primarily toward Florida residents.  Lewis Dec. ¶8.

- Mrs. Lewis, as sole representative of UnderTheHoode.com, does not have a telephone listing in Florida.  Lewis Dec. ¶9.

- Mrs. Lewis, as sole representative of UnderTheHoode.com, has never contracted with an internet service provider located in Florida and never maintained a listserv accessible in Florida.  Lewis Dec. ¶10.

- Mrs. Lewis, as sole representative of UnderTheHoode.com, has never provided links to Websites active in Florida.  Lewis Dec. ¶11.

- Mrs. Lewis, as sole representative of UnderTheHoode.com, has never participated in an Internet Chat with Florida residents or hosted an Internet discussion forum accessible to Florida residents.  Lewis Dec. ¶12.

- Mrs. Lewis, as sole representative of UnderTheHoode.com, has never remotely operated computers within Florida.  Lewis Dec. ¶13.

- Mrs. Lewis, as sole representative of UnderTheHoode.com, has never attended a tradeshow in Florida.  Lewis Dec. ¶14.

- Mrs. Lewis, as sole representative of UnderTheHoode.com, is based in Arizona with operations in Arizona. Mrs. Lewis, as sole representative of UnderTheHoode.com, has no operations at all in Florida.  Lewis Dec. ¶15.

- Mrs. Lewis, as sole representative of UnderTheHoode.com, has sold the following *Under the Hoode*™ Nipple Huggers to customers with shipping addresses in Florida, totaling $183.85 (not including the $25.55 sale of one Pink Ice Filigree Non-piercing Nipple Jewelry to Wallace Holland, an acquaintance of Plaintiff Claudia Croft, on

September 7, 2009, after Plaintiffs' filing of the Complaint):

- o *Under the Hoode*™ Hearts Trio – Red Nipple Huggers, Quantity 1, $16.95 (Vstore FL sales, Exhibit A);

- o *Under the Hoode*™ White Orient Nipple Huggers / Clip set, Quantity 1, $26.45 (Vstore FL sales, Exhibit A);

- o *Under the Hoode*™ Frosted Pink Pearl Nipple Huggers, Quantity 1, $15.65 (Vstore FL sales, Exhibit A);

- o *Under the Hoode*™ Teardrop Tassels Nipple Huggers / Clip set, Quantity 1, $17.65 (Vstore FL sales, Exhibit A);

- o *Under the Hoode*™ Purple Amethyst Nipple Huggers, Quantity 1, $14.65 (Vstore FL sales, Exhibit A);

- o *Under the Hoode*™ Slave Bells Non-piercing Nipple / Clip Set – Black/silvertone, Quantity 1, $24.55 (Vstore FL sales, Exhibit A);

- o *Under the Hoode*™ Pink Aurora Seascape Nipple Huggers / Clip set, Quantity 1, $26.45 (Vstore FL sales, Exhibit A);

- o  *Under the Hoode*™ Azure Delights Nipple Huggers, Quantity 1, $16.85 (Vstore FL sales, Exhibit A); and

- o *Under the Hoode*™ Teal Pearls NH/Clip set, Quantity 1, $24.65 (Vstore FL sales, Exhibit A).  Lewis Dec. ¶16.

- The products sold in paragraph 16 account for less than 6% of gross worldwide sales of *Under the Hoode*™ Nipple Huggers transacted through UnderTheHood.com between November 2006 and December 2009 .  Lewis Dec. ¶17.

- Mrs. Lewis, as sole representative of UnderTheHoode.com, has sold a variety of

*Under the Hoode*™ products to thirty-nine Customers with shipping addresses in

Florida totaling $1,548.15 (not including the one $25.55 sale to Wallace Holland, an

acquaintance of Plaintiff Claudia Croft, on September 7, 2009, after Plaintiffs' filing

of the Complaint).  Lewis Dec. ¶18.

- Mrs. Lewis, as sole representative of UnderTheHoode.com, has never provided

  customer support or other maintenance-related services to Florida residents in

  connection with the items listed above.  Lewis Dec. ¶19.

- Mrs. Lewis, as sole representative of UnderTheHoode.com, has never sent emails

  directly to Florida residents advertisingUnderTheHoode.com or products for sale.

  Lewis Dec. ¶20.

- Mrs. Lewis, as sole representative of UnderTheHoode.com, has never offered

  products for sale at a discounted rate to Florida residents to the exclusion of residents

  of other states.  Lewis Dec. ¶21.

- Mrs. Lewis, as sole representative of UnderTheHoode.com, has never operated a

  website whose visual content altered in response to visitors from the state of Florida.

  Lewis Dec. ¶22.

## III.    ARGUMENT

The District Court for the Middle District of Florida does not have personal jurisdiction

over Mrs. Lewis for the matters alleged in the Complaint.  A court is obligated to dismiss an

action against a defendant over which it has no personal jurisdiction.  *Kemin Foods, L.C. v.*

*Omniactive Health Techs., Inc.*, 2009 WL 2365850 at *1 (M.D. Fla. July 30, 2009) (citing

*Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n. 6 (11th Cir. 1999)).  On a motion to dismiss for

lack of personal jurisdiction, the plaintiff bears the burden of establishing, by a preponderance of

the evidence, that the court has jurisdiction over the defendant. *Kemin Foods, L.C.*, 2009 WL 2365850 at *1 (citing *Avocent Huntsville Corp. v. Aten Int'l, Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008)).

The determination of whether the court has personal jurisdiction over a defendant is governed by a two-prong analysis. *Kemin Foods, L.C.*, 2009 WL 2365850 at *1. First, the court must determine whether the plaintiff has alleged facts sufficient to subject the defendant to Florida's long-arm statute found in Fla. Stat. §48.193. *Kemin Foods, L.C.*, 2009 WL 2365850 at *1 (citing *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). Second, once the court has determined that the long-arm statute is satisfied, the court must determine whether plaintiff's assertion of jurisdiction comports with the Constitution's requirements of Due Process and traditional notions of fair play and substantial justice. *Kemin Foods, L.C.*, 2009 WL 2365850 at *1 (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945))). Since this case involves patent law, the District Court for the Middle District of Florida will evaluate the second prong of the personal jurisdiction analysis under the law of the Federal Circuit. *See 3D Sys. v. Aarotech Labs.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998) ("While we defer to the interpretation of a state's long-arm statute given by that state's highest court, ... when analyzing personal jurisdiction for purposes of compliance with federal due process, Federal Circuit law, rather than regional circuit law, applies."); *Kemin Foods, L.C.*, 2009 WL 2365850 at *1. Only if both prongs of the personal jurisdiction analysis are satisfied may this Court exercise personal jurisdiction over a nonresident defendant. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996). In the present case, Plaintiffs have alleged insufficient facts to subject Mrs.

Lewis to personal jurisdiction in the Middle District of Florida either under a theory of specific personal jurisdiction or general personal jurisdiction.

A.   The Court lacks specific personal jurisdiction over Mrs. Lewis

1.   *Mrs. Lewis does not contest specific jurisdiction under Florida's long-arm statute*

Florida's long-arm statute for specific personal jurisdiction "is satisfied when a defendant, or its agent, commits a tortious act within Florida." *Kemin Foods, L.C.*, 2009 WL 2365850 at *3; *see* Fla. Stat. §48.193(1)(b).   "Patent infringement constitutes a tortious act within the meaning of Florida's long-arm statute for the purposes of establishing personal jurisdiction." *Kemin Foods, L.C.*, 2009 WL 2365850 at *3 (quoting *J.P. Morgan Trust Co. v. Potash Corp. of Saskatchewan, Inc.*, 2007 U.S. Dist. LEXIS 23872 at *10, n. 8 (M.D. Fla. Mar. 30, 2007)); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1365 (Fed. Cir. 2008) ("Patent infringement is a tort.").   A plaintiff makes a prima facie case for jurisdiction against defendants by alleging patent infringement within the Middle District of Florida.   *Kemin Foods, L.C.*, 2009 WL 2365850 at *4 ("By alleging patent infringement in Oldsmar, Florida, Plaintiffs made a prima facie case for jurisdiction against Defendants in the Amended Complaint").   Furthermore, "[i]f the plaintiff has pled a prima facie case for jurisdiction, a simple motion to dismiss for lack of jurisdiction must fail, as a motion to dismiss, without more, challenges only the facial sufficiency of the jurisdictional pleading."   *Kemin Foods, L.C.*, 2009 WL 2365850 at *4 (quoting *Walt Disney Co. v. Nelson*, 677 So.2d 400, 402 (Fla. Dist. App. 1996)).

In this case, Plaintiffs have alleged patent and trademark infringement in Tampa, Florida which is located in the Middle District of Florida.   Mrs. Lewis does not dispute whether Florida's long-arm statute is satisfied in regard to specific personal jurisdiction.

### 2. *Even if Plaintiffs could satisfy Florida's long-arm statute, subjecting Mrs. Lewis to this Court's specific personal jurisdiction would violate Due Process*

Even if this court finds that Mrs. Lewis's conduct falls within Fla. Stat. §48.193(1)(b), this court should not assert specific personal jurisdiction because doing so would violate the Constitution's requirement of Due Process. The Due Process component of specific personal jurisdiction involves a two-part inquiry: (1) "whether there are sufficient minimum contacts between Defendants and the forum state to satisfy the due process clause of the Fourteenth Amendment" and (2) "whether maintenance of the suit in the forum state violates 'traditional notions of fair play and substantial justice.'" *Kemin Foods, L.C.*, 2009 WL 2365850 at *6 (citing *Int'l Shoe*, 326 U.S. at 316); *see Cronin v. Washington Nat'l Ins. Co.*, 980 F.2d 663, 670 (11th Cir. 1993). As discussed above, when evaluating Due Process, the District Court for the Middle District of Florida defers to the law of the Federal Circuit. *See Kemin Foods, L.C.*, 2009 WL 2365850 at *1. The Federal Circuit has set forth a three-factor test for determining whether minimum contacts have been established: "(1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities within the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Silent Drive v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003) (internal citations omitted) (quoted in *Kemin Foods, L.C.*, 2009 WL 2365850 at *1). In *Inamed Corp. v. Kuzmak*, the Federal Circuit explained that "[t]he first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." 249 F.3d 1356, 1360 (Fed. Cir. 2001) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995)). In this case, the District Court for the Middle District of Florida would violate Mrs. Lewis's Constitutional right to Due Process by exercising specific personal jurisdiction because Mrs. Lewis does not have

minimum contacts with Florida and because subjecting Mrs. Lewis to jurisdiction in Florida would violate traditional notions of justice and fair play.

a.   Minimum Contacts

The Federal Circuit has set forth two factors for determining whether a defendant has minimum contacts with a forum state in a patent case:  "(1) whether the defendant purposefully directed its activities at residents of the forum" and "(2) whether the claim arises out of or relates to the defendant's activities within the forum." *Silent Drive.*, 326 F.3d at 1201 (internal citations omitted); *see Instabook Corp. v. Instantpublisher.com*, 469 F. Supp. 2d 1120, 1124 (M.D. Fla. 2006).  Although Plaintiffs never explicitly discuss a minimum contacts-type analysis in the Complaint, it appears that Plaintiffs are solely relying on the existence of Mrs. Lewis's website www.underthehoode.com as the basis for Mrs. Lewis's alleged minimum contacts with Florida. Each of the two factors in the Federal Circuit's minimum contacts analysis weighs against a finding that Mrs. Lewis's website constitutes minimum contacts with Florida.  A lack of minimum contacts is sufficient for a court to find that personal jurisdiction over Mrs. Lewis is improper.

(i)   Purposeful Direction

The first factor in the minimum contacts analysis set forth by the Federal Circuit is "whether the defendant purposefully directed its activities at residents of the forum." *Silent Drive*, 326 F.3d at 1201 (internal citations omitted); *see Instabook Corp*, 469 F. Supp. 2d at 1124.  On the issue of whether a defendant's website constitutes purposeful direction, the Federal Circuit has provided little direction.  *Instabook Corp.*, 469 F. Supp. 2d at 1124 ("The Federal Circuit has not yet set forth extensive guidance on the issue of Internet activity as a basis for minimum contacts.").  In *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005), the Federal Circuit addressed different approaches taken by courts,

including *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)[1], without explicitly adopting any of them.  Nonetheless, in *Trintec Indus., Inc.*, the Federal Circuit did hold that "the ability of [forum] residents to access the defendants' websites ... does not by itself show any persistent course of conduct by the defendants in the [forum]."  395 F.3d at 1281 (quoting *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000)).

In the absence of controlling authority from the Federal Circuit, the District Court for the Middle District of Florida adopted the approach of a Maryland federal district court in *Shamsuddin v. Vitamin Research Products*, 346 F. Supp.2d 804 (D. Md. 2004), a patent infringement case involving a nationally-accessible website capable of accepting purchase orders for the allegedly infringing products that was operated by the defendant.  *See Instabook Corp.*, 469 F. Supp. 2d at 1124 ("Left without controlling authority from the Federal Circuit on the issue of the sufficiency of website contacts, this Court must forge its own course… After reviewing many decisions with many different fact patterns and varying outcomes, the Court agrees with the observations made by the Maryland district court in [*Shamsuddin*]").

In *Shamsuddin*, the defendant's "only contacts with Maryland [were] a commercial, interactive website which [was] accessible to Maryland residents (as it [was] to persons across the country and around the world), and two sales [one via the website, one via a toll-free telephone number] of the [allegedly infringing] product to Maryland residents who [were]

---

[1] In *Zippo*, a Pennsylvania district court developed a "sliding scale" analysis focusing on the interactivity of the defendant's website. 952 F. Supp at 1124.  The *Zippo* court determined:  "[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.* at 1124-25.

acquaintances of [the] plaintiff."  346 F. Supp. 2d at 813.  The *Shamsuddin* court held that "[t]wo

sales to Maryland residents and maintenance of a commercial website do not rise to the level of

contacts of such 'quality and nature' that the exercise of personal jurisdiction…. would comport

with due process."  *Id.*  In reaching this conclusion, the *Shamsuddin* court noted that other

decisions had "criticized *Zippo's* emphasis on website interactivity" and "concur[red] with those

courts and commentators that [had] concluded that '[t]he construction of the information

superhighway does not warrant a departure from the well-worn path of traditional personal

jurisdiction analysis.'" 346 F. Supp. 2d at 811 (quoting *S. Morantz, Inc. v. Hang & Shine*

*Ultrasonics, Inc.*, 79 F. Supp. 2d 537, 543 (E.D. Pa. 1999)).  The *Shamsuddin* court continued:

> Depending on the facts presented, website interactivity may have some bearing on
> the jurisdictional analysis, but it is not determinative... Website interactivity is important
> only insofar as it reflects commercial activity, and then only insofar as that commercial
> activity demonstrates <u>purposeful targeting</u> of residents of the forum state or purposeful
> availment of the benefits or privileges of the forum state. In the jurisdictional context,
> <u>there is no critical difference between operating a toll-free, nationwide telephone number</u>
> <u>capable of accepting purchase orders, on the one hand, and operating a website capable of</u>
> <u>accepting purchase orders</u>. Similarly, there is no critical difference between operating a
> middle-category, "interactive" website with an e-mail link or printable order form that
> allows customers to purchase at a later time, on the one hand, and operating an "active"
> website that allows customers to complete the purchase online. The ultimate question
> remains the same, that is, whether the defendant's contacts with the state are of such a
> quality and nature such [sic] that it could reasonably expect to be haled into the courts of
> the forum state.

346 F. Supp. 2d at 811, 813 (citation and internal quotation omitted) (adopted by the District

Court for the Middle District of Florida in *Instabook Corp.*, 469 F. Supp. 2d at 1125-26)

(emphasis added).

Purposeful targeting was a crucial determinant of minimum contacts for the *Shamsuddin*

court because the purpose of Due Process "is to provide predictability and give notice to the

defendant that it is subject to suit in the forum state, so that the company 'can act to alleviate the

risk of burdensome litigation by procuring insurance, passing the expected costs on to customer,

or, if the risks are too great, severing its connection with the State.'"   346 F. Supp. 2d at 812

(quoting *World-Wide Volkswagen*, 444 U.S. at 297)   The *Shamsuddin* court asserted that a

defendant should not be haled into a jurisdiction solely as a result of "'random,' 'fortuitous,' or

'attenuated' contacts." *Id.* at 812 (quoting *Burger King*, 471 U.S. at 475).  The *Shamsuddin*

court rejected arguments that the defendant had purposefully directed its conduct at Maryland

merely because it was foreseeable that Maryland residents likely would purchase the infringing

product through the website.  *Id.* at 814.  The court asserted that the "foreseeability" that is

critical to due process is "whether the defendant's conduct and connection with the forum State

are such that he should reasonably anticipate being haled into court there," not whether there was

a likelihood that the product would find its way into the forum.  *Id.* at 814 (quoting *World-Wide

Volkswagen*, 444 U.S. at 297).

In *Instabook Corp.*, as in *Shamsuddin*, the court found that the exercise of personal

jurisdiction over the defendant based on the defendant's website would violate due process.  469

F. Supp. 2d at 1126.  In *Instabook Corp.*, the defendant sold products (made using the plaintiff's

patented method) to two Florida residents who ordered the products through the defendant's

website.  *Id.*  In reaching its decision, the District Court for the Middle District of Florida in

*Instabook Corp.* noted:

> The Supreme Court has emphasized that "the <u>foreseeability</u> that is critical to due
> process analysis is ... that the defendant's conduct and connection with the forum State
> are such that he should <u>reasonably anticipate being haled into court there</u>." *World-Wide
> Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). "[T]he minimum contacts
> must be 'purposeful' contacts. The requirement for purposeful minimum contacts helps
> ensure that <u>non-residents have fair warning that a particular activity may subject them to
> litigation within the forum</u>. Fair warning is desirable [because] non-residents are thus
> able to organize their affairs, alleviate the risk of burdensome litigation by procuring
> insurance and the like, and otherwise plan for the possibility that litigation in the forum
> might ensue." *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1565 (Fed.
> Cir. 1994) (citations omitted).

469 F. Supp. 2d at 1127 (emphasis added).

Ultimately, the District Court for the Middle District of Florida held that the defendants "could not reasonably anticipate being haled into court in Florida based on its operation of interactive websites accessible in Florida and its sales to two Florida residents. There is <u>no indication of targeting or solicitation</u> of Florida residents." *Id.* (emphasis added). Furthermore, the court held that "[t]o exercise jurisdiction over Defendant under these circumstances would run afoul of the requirement that [m]inimum contacts must be 'purposeful' contacts in order to 'ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum.'" *Instabook Corp.*, 469 F. Supp. 2d at 1127 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-74 (1985); *see also Shamsuddin*, 346 F. Supp. 2d at 814 ("Asserting personal jurisdiction over [the defendant] on the basis of its isolated sales and interactive website would ignore the constitutional requirement of deliberate, rather than merely foreseeable, contacts.").

Other courts have also found that a defendant's minimal Internet sales of the accused product to forum residents were not enough to constitute minimum contacts. In *Tuna Processors, Inc. v. Anova Food, Inc.*, the court found that two sales of the accused product to forum residents through the defendant's interactive website were not enough to assert jurisdiction. 2007 WL 3232609 at *4 (D. Or. Nov. 1, 2007). The court held that "[i]n the absence of an established distribution channel, a local sales force, or local advertising, ... two sales of [the accused product] via the Internet were random and fortuitous contacts rather than the result of purposeful conduct directed at [the] forum." *Id.* at *3-4; *See also High Maintenance Bitch, LLC v. Uptown Dog Club, Inc.*, 2007 WL 3046265 at *1 (W.D. Wash. 2007 Oct. 17, 2007) (court characterized the sale of a single accused product through defendant's website to a forum resident as an "isolated occurrence" and therefore the requirements of due

process were not satisfied).  In *Roberts v. Paulin*, the court refused to assert jurisdiction even when the defendant's website sold $500 worth of the accused device to forum residents through a website.  2007 WL 3203969 at *3 (E.D. Mich. Oct. 31, 2007).  After reviewing other case law, the court asserted that "where courts have found personal jurisdiction on the basis of an interactive website, the courts generally require something more in the way of a specific, meaningful connection with the forum state in particular, as opposed to a connection with the nation as a whole."  *Id.*  The *Roberts* court held that by maintaining an interactive website, the defendant was no more benefitting from the laws of Michigan (the forum state) than the laws of any other state.  *Id.*  Thus, the interactive website, without additional acts of purposeful targeting, was insufficient to assert jurisdiction. *Id.*

     In this case, Plaintiffs appear to be asserting that Mrs. Lewis purposefully directed her activities at Florida residents by offering the allegedly infringing products for sale through a website that was accessible to Florida residents.  Like the defendants in *Instabook Corp.*, Mrs. Lewis is merely operating an interactive nationally-accessible website; thus, Mrs. Lewis's activity was not "targeting or solicit[ing] Florida residents," just as the District Court for the Middle District of Florida found in *Instabook Corp.* 469 F. Supp. 2d. at 1127.  There is no difference between Mrs. Lewis's website and a "toll-free, nationwide telephone number capable of accepting purchase orders" which the *Shamsuddin* court found would not be a "contact[] with the [forum] state [ ] of such a quality and nature [ ] that [the defendant] could reasonably expect to be haled into the courts of the forum state," *Shamsuddin*, 346 F. Supp. 2d at 813 (citation and internal quotation omitted) (adopted by the District Court for the Middle District of Florida in *Instabook Corp.*, 469 F. Supp. 2d at 1125-26).  *See also World-Wide Volkswagen Corp.*, 444 U.S. at 297 (Supreme Court held that "foreeeabitliy" is critical to the due process analysis).

The District Court for the Middle District of Florida has emphasized that non-residents should have "fair warning" that their activity will subject them to litigation within Florida so that they can "organize their affairs, alleviate the risk of burdensome litigation by procuring insurance and the like, and otherwise plan for the possibility that litigation in the forum might ensue." *Instabook Corp.*, 469 F. Supp. 2d at 1127 (quoting *Beverly Hills Fan Co.*, 21 F.3d at 1565). Mrs. Lewis had no fair warning of being haled into court in Florida by merely offering products for sale on a website that was accessible to Florida residents. Even where the defendants sold products to Florida residents through a website in *Instabook Corp.*, the District Court for the Middle District of Florida did not find that the defendants had "fair warning" or should have "foreseen" being haled into court in Florida. 469 F. Supp. 2d at 1126. In this case, Mrs. Lewis has provided a list of customers that have purchased Nipple Huggers-related products through the website and have a Florida shipping address. Exhibit A. However, only two of the Nipple Hugger-related products sold to Florida residents are alleged to have infringed Plaintiff's U.S. Patent No. 6,758,061 (Complaint ¶11). These two products are the Slave Bells Non-piercing Nipple / Clip Set - Black/silvertone (sold on September 23, 2009) and Pink Ice Filigree Non-piercing Nipple Jewelry (sold on September 7, 2009). Exhibit A. The latter was sold to Wallace Holland, an acquaintance of the Plaintiffs, after the filing of the Complaint on July 20, 2009. Where a plaintiff instructs his or her acquaintance to purchase an allegedly infringing product through a defendant's website, courts generally hold that the sale is not a basis for establishing minimum contacts. *Millennium Enters., Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 911 (D. Or. 1999) ("Defendants cannot be said to have "purposely" availed themselves of the protections of this forum when it was an act of someone associated with plaintiff, rather than defendants' Web site advertising, that brought defendants' product into this

forum."). If the sale to Wallace Holland is deemed irrelevant by this Court, the sale of the Slave

Bells Non-piercing Nipple / Clip Set - Black/silvertone for $24.55 is Mrs. Lewis's only relevant

contact with Florida. This "random" and "fortuitous" single sale of an alleged infringing product

should not be a sufficient basis for this Court to assert specific personal jurisdiction. *Burger*

*King*, 471 U.S. at 475 ("[The] 'purposeful availment' requirement ensures that a defendant will

not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated'

contacts.") (internal citations omitted).

In regards to Mrs. Lewis's use of Plaintiffs' NIPPLE HUGGERS mark on her website,

the same analysis and conclusions discussed above apply for the jurisdictional analysis for the

alleged trademark infringement. In *Dynetech Corp. v. Leonard Fitness, Inc.*, the defendants

offered products for sale with plaintiff's trademark on a website accessible to Florida residents.

523 F. Supp. 2d 1344, 1347 (M.D. Fla. 2007). The District Court for the Middle District of

Florida held that "the possibility that Florida consumers could purchase products through that

website would not amount to a purposeful contact under traditional jurisdictional principles." *Id.*

Thus, Mrs. Lewis's use of the NIPPLE HUGGERS mark on the website and isolated sales of

Nipple Hugger related products do not render the website purposefully directed at Florida

residents. The quality and nature of selling 9 alleged products over the course of three years is

attenuated contacts with Florida that does not rise to the level of purposeful availment, direction,

or solicitation. Exhibit A. Such isolated sales by Mrs. Lewis is not a significant activity within

Florida to create a continuing obligation between Mrs. Lewis and the state of Florida. The

*Shamsuddin* court stated the following:

> A corporation's sales to forum residents must be more than "isolated" occurrences
> for the assertion of jurisdiction to satisfy the requirements of due process. *Burger King,*
> 471 U.S. at 476 n. 18, 105 S.Ct. 2174. Although personal jurisdiction jurisprudence has
> evolved from the days when a defendant must have physically entered the forum in order

to be subject to the jurisdiction of its courts, *see Pennoyer v. Neff,* 95 U.S. 714, 5 Otto 714, 24 L.Ed. 565 (1877), today a defendant still must have conceptually "entered" the forum State. *See ALS Scan,* 293 F.3d at 713 (adopting the *Zippo* test to determine when a non-resident defendant "through electronic contacts, has conceptually 'entered' the State via the Internet for jurisdictional purposes").

346 F. Supp.2d at 814.  The *Shamsuddin* court held that two sales of the alleged infringed product to Maryland residents illustrated neither that the Defendant "has engaged in significant activities within" Maryland nor that the Defendant has "created 'continuing obligations' between" itself and Maryland, such that the Defendant "manifestly has availed [itself] of the privilege of conducting business there." 346 F. Supp.2d at 814, quoting *Burger King,* 471 U.S. at 475-76, 105 S.Ct. 2174.

For all these reasons, the first factor in the Federal Circuit's test for minimum contacts, regarding the purposeful direction of one's activity at forum residents, strongly weighs in favor of a finding of a lack of minimum contacts for the alleged patent and trademark infringement.

(ii)   <u>Relatedness</u>

The second factor in the minimum contacts analysis set forth by the Federal Circuit is "whether the claim arises out of or relates to the defendant's activities within the forum." *Silent Drive*, 326 F.3d at 1201 (internal citations omitted); *see Instabook Corp.*, 469 F. Supp. 2d at 1124.  In cases where a plaintiff asserts that a defendant has minimum contacts with a forum state solely because of the defendant's website, the first factor in the minimum contacts analysis (regarding purposeful direction) has been dispositive.  *See, e.g., Instabook Corp.*, 469 F. Supp. 2d at 1125-27 (finding defendant did not have minimum contacts with the forum state <u>solely</u> because defendant's website did not constitute "targeting" or "soliciting" of forum residents); *Dynetech Corp.*, 523 F. Supp. 2d 1347 (finding defendant did not have minimum contacts with forum state <u>solely</u> because the defendant's website did "not amount to a purposeful contact").  Therefore, analysis of the relatedness factor of the Federal Circuit's test is moot since the

purposeful direction factor is dispositive of the minimum contacts analysis in the Internet context.

      b.  <u>Traditional Notions of Fair Play and Substantial Justice</u>

Even if Mrs. Lewis has minimum contacts with Florida, subjecting Mrs. Lewis to jurisdiction in the Middle District of Florida would violate her Constitutional right to Due Process since it would violate "traditional notions of fair play and justice."  The defendant's right to Due Process is violated if "maintenance of the suit in the forum states violates 'traditional notions of fair play and substantial justice.'"  *Kemin Foods, L.C.*, 2009 WL 2365850 at *6 (quoting *Int'l Shoe*, 326 U.S. at 316).  Like the minimum contacts analysis, this Court must evaluate this prong of the due process analysis under the law of the Federal Circuit.  *See Kemin Foods, L.C.*, 2009 WL 2365850 at *6.  The Federal Circuit has held that the assertion of jurisdiction must be "reasonable and fair."  *Silent Drive*, 326 F.3d at 1201 (internal citations omitted); *see Instabook Corp.*, 469 F. Supp. 2d at 1124.

Maintenance of the suit in the Middle District of Florida would be unfair because Mrs. Lewis would suffer an enormous burden if she were forced to litigate in Florida.  Mrs. Lewis is on a fixed income in Arizona and her operation of the UnderTheHoode.com website has brought her minimal income.  Mrs. Lewis's total sales since November 2006 have been $3,169.15. Exhibit B.  Due to the downturn in the economy, the business operated by UnderTheHoode.com has actually lost income. Consequently, Mrs. Lewis has limited resources to defend against the claims in the Complaint, as frivolous as they are.

Second, Florida has no interest in adjudicating this dispute. The only connection between Florida and the dispute is the random sales of Nipple Huggers-related products by Mrs. Lewis to customers shipping addresses in Florida over the last 3 years amounting in no more than

$200.00, e.g. less than 6% of gross worldwide sales of Mrs. Lewis . *See* Exhibit A. This tenuous thread is insufficient to overcome the overwhelming interest in Arizona resolving the dispute.

B.  The Court lacks general personal jurisdiction over Mrs. Lewis

If the suit does not arise out of or relate to the defendant's contact with the forum, then the defendant must have engaged in "substantial and not isolated" activity in the forum state before a court obtains general jurisdiction over the defendant under Florida's long-arm statute. Fla. Stat. §48.193(2) ("A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or no the claim arises from that activity"). "Substantial and not isolated activity" within the state requires that the defendant maintain "continuous and systematic general business contacts" with the state. *Miller v. Berman*,  289 F. Supp. 2d 1327, 1334 (M.D. Fla. 2003); *see also Campbell Pet Co. v. Miale*, 542 F.3d 879, 883 (Fed. Cir. 2008) (holding that "a forum does not have general jurisdiction over a defendant business entity unless the defendant has contacts with the forum state that qualify as 'continuous and systematic general business contacts'") (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).

Plaintiffs have not and cannot allege that Mrs. Lewis maintains "continuous and systematic general business contacts" with Florida.  The Lewis Declaration makes it clear that Mrs. Lewis's contacts with Florida, if any, do not rise to the level required to sustain the exercise of general jurisdiction.  Mrs. Lewis's sales of Nipple Hugger-related products to nine Florida residents[2] over a three-year period totaling $183.85[3] (representing less than 6% of Mrs. Lewis's

---

[2] Not including the sale of one Pink Ice Filigree Non-piercing Nipple Jewelry to Wallace Holland, an acquaintance of Plaintiff Claudia Croft, on September 7, 2009, after Plaintiff's filing of the Complaint.

gross sales of Nipple Hugger-related products during the same period), Lewis Dec. ¶16-17, are

not "continuous and systematic" business contacts with Florida.  Courts have declined to find

jurisdiction under Fla. Stat. §48.193(2) in instances where the defendant had far greater contacts

with the forum than Mrs. Lewis has in this case.  For example, in *Musiker v. Projectvision, Inc.*,

960 F. Supp. 292, 297 (S.D. Fla. 1997), the court found a lack of general personal jurisdiction

even though employees or officers of the nonresident corporation made telephone calls to a

Florida resident, faxed and mailed corporate materials to a stock purchaser in Florida, and made

a presentation to stockbrokers at a meeting in Florida.  Similarly, in *Campbell*, the Federal

Circuit held that defendants' contacts were insufficient to establish general jurisdiction where

they had made twelve sales to forum residents for approximately $14,000 in gross revenue

(approximately two percent of the defendants' total sales).  542 F.3d at 884.  Furthermore, in

*Helicopteros*, the Supreme Court found the defendant's activity in the forum state (Texas) not to

be "continuous and systematic" even when the defendant had purchased helicopters (accounting

for 80% of its fleet), spare parts, and accessories for more than $4 million from Texas as well as

having its pilots and other personnel train in Texas.  466 U.S. at 411.

Finally, general jurisdiction cannot be based solely upon Mrs. Lewis's maintenance of a

website that is accessible to Florida residents, regardless of the fact that Mrs. Lewis takes orders

for her products over the internet.  In *Campbell*, the Federal Circuit found that defendants'

website which accepted purchase orders for the accused product from forum residents was not

sufficient to establish jurisdiction because it was not "specifically directed" at forum residents.

Rather, the Federal Circuit noted, the website was "available to all customers throughout the

country who have access to the Internet…[T]he ability of [forum] residents to access the

---

[3] Of these $183.85 worth of Nipple Hugger sales, only $24.55 worth relates to the sale of a product specifically listed as infringing U.S. Patent No. 6,758,061 in the Complaint (that is, Slave Bells Non-piercing Nipple / Clip Set - Black/silvertone).  *See* Exhibit A.

defendants' websites….does not by itself show any persistent course of conduct by the defendants in the [forum].'"  542 F.3d at 884 (citing *Trintec*, 395 F.3d at 1281).  Like the defendants' website in Campbell, Mrs. Lewis's website accepts purchase orders from residents of any state and therefore is not specifically directed at Florida.  Thus, Mrs. Lewis's website is not "continuous and systemic" activity in Florida sufficient to establish general personal jurisdiction.

## IV.    CONCLUSION

Based on all of the foregoing, Mrs. Lewis's Motion to Dismiss should be granted because the Court does not have personal jurisdiction over Defendant.  In regards to specific personal jurisdiction, Mrs. Lewis does not contest whether her activities bring her within ambit of Florida's long-arm statute.  In the event that the Court finds jurisdiction exists under Florida's long-arm statute, Plaintiffs still have the burden of showing that Mrs. Lewis's contacts with Florida are substantial enough to satisfy the Due Process requirements outline by the Supreme Court in *International Shoe* and its progeny.  As discussed above, the assertion of specific personal jurisdiction here would not comport with federal due process.  In regards to general personal jurisdiction, Mrs. Lewis's contacts, if any, with Florida are not "continuous and systematic."  Thus, Plaintiffs have not and can not make a prima facie case showing that an assertion of general personal jurisdiction would be appropriate under Florida's long-arm statute. For all these reasons, Mrs. Lewis respectfully requests the Court enter an Order of Dismissal.

## V.    LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01, Defendant's counsel, J. Peter Paredes has conferred with opposing counsel Edward P. Dutkiewicz regarding the present Motion for Lack of Personal Jurisdiction and Mr. Dutkiewicz has indicated that he will respond accordingly.

WHEREFORE, Defendant, Jeanette M. Lewis respectfully requests that Plaintiff's

Complaint be dismissed for Lack of Personal Jurisdiction.


JEANETTE LEWIS., an Individual
Defendant


By:_____/s/ J. Peter Paredes_____
J. Peter Paredes
One of its attorneys

J. Peter Paredes, Esq.
Admitted *Pro Hac Vice*
Rosenbaum & Silvert, P.C.
650 Dundee Road, Suite 380
Northbrook, Illinois 60062
(847) 770-6000
(847) 770-6006 Facsimile
jparedes@biopatentlaw.com
Of Counsel for Jeanette M. Lewis

ABBY DRITZ SALZER
Florida Bar No. 0591475
adritz@trenam.com
Trenam, Kemker, Scharf, Barkin,
Frye, O'Neill & Mullis, P.A.
Suite 2700, 101 East Kennedy Boulevard
Post Office Box 1102
Tampa, Florida 33601-1102
(813) 223-7474
(813) 229-6553 Facsimile
Local Counsel for Jeanette M. Lewis

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this **4**th day of **January, 2010,** the foregoing Motion for Lack of Personal Jurisdiction was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to Edward P. Dutkiewicz, Esquire, P.O. Box 937, Dade City, Florida 33526 and Abby D. Salzar of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A. Suite 2700, 101 East Kennedy Boulevard, Post Office Box 1102, Tampa, Florida 33601-1102.


_____/s/ J. Peter Paredes_____
Attorney for Defendant