UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CLAUDIA CROFT, an Individual,
and SHEER DELIGHT, INC., a
Florida Corporation,**

    **Plaintiffs,**

    v.                                                   Case No: 8:09-CV-1370-T-27AEP

**JEANETTE M. LEWIS, an
Individual, resident of Arizona,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Claudia Croft, owner of Sheer Delight, Inc., makes and sells "Nipple Hugger" jewelry, for which she has obtained patent and trademark protection. Croft filed suit against Jeanette Lewis, alleging Lewis makes and sells infringing jewelry. Lewis, a resident of Arizona, claims this Court lacks personal jurisdiction over her. She admits selling at least ten Nipple Huggers-related products to Florida residents over a three-year span through her website, accounting for approximately 6% of her sales. And she concedes specific jurisdiction exists under Florida's long-arm statute. But Lewis argues that her federal due process rights would be offended if she were subjected to this Court's jurisdiction. The Court finds Lewis had sufficient 'contacts' with Florida to permit the exercise of personal jurisdiction, and that asserting such jurisdiction would be fair. Therefore, the Court recommends Lewis' Motion to Dismiss be **DENIED**.[1]

---

[1] Defendant's Motion to Dismiss (Dkt. No. 22) was referred to the undersigned by the Honorable James D. Whittemore (Dkt. No. 25).

**I.**     *Factual Background*

Claudia Croft is the owner of United States Patent No. 6,758,061 (the "'061 patent"), entitled "Nipple Hugger Jewelry System," which issued on July 6, 2004. (Dkt. No. 1 ¶ 7.) The '061 patent is directed to a nipple hugger jewelry system and pertains to adorning the breasts of a user in a non-piercing manner. '061 Patent col. 1, ll. 11-13. Additionally, Croft registered the mark "Nipple Hugger" on September 14, 2004, through the United States Patent & Trademark Office for "wire jewelry for adorning the breast nipples of a wearer." (Dkt. No. 1 ¶ 13.) Sheer Delight, Inc. is owned by Croft, and is a subchapter S corporation. (*Id.*) Croft manufacturers Nipple Hugger Jewelry and markets and sells that jewelry through Sheer Delight.[2] (*Id.*)

Lewis is an individual residing in Arizona and founder of the business operated by the website www.UnderTheHoode.com. (Lewis Decl. ¶ 1.) Croft alleges that Lewis makes, uses, or sells goods that infringe the '061 patent and/or infringe the "Nipple Hugger" mark. (Dkt. No. 1 ¶¶ 8, 16.)

On July 20, 2009, Croft filed a Complaint against Lewis alleging infringement of the '061 patent and infringement of the "Nipple Hugger" trademark. (*See* Dkt. No. 1.) Lewis filed the instant Motion to Dismiss asserting that this Court lacks personal jurisdiction over her. (Dkt. No. 22.) In support of her Motion to Dismiss, Lewis asserts that she has not had sufficient contacts with the state of Florida to give rise to personal jurisdiction. (Dkt. No. 22 at 3.) In particular, Lewis states that she does not have a facility, branch office, or other place of business in Florida, and has been never licensed to do business in Florida. (Lewis Decl. ¶ 2.) Additionally, Lewis

---

[2] Hereinafter, Plaintiff Croft and Plaintiff Sheer Delight will be referred to collectively as "Croft."

claims that she does not have any employees or agents in Florida, and has never engaged in a joint venture or other relationship with enterprises in Florida. (*Id.* ¶ 3.) Moreover, Lewis states that she does not have any property in Florida, has not specifically directed advertising toward the state of Florida, and has not participated in Internet discussions or "chats" with Florida residents. (*Id.* ¶¶ 6, 8, 12.) But Lewis admits that she has sold products to customers with shipping addresses in Florida, to include at least one product alleged to have infringed the '061 patent. (*Id.* ¶ 16.) Specifically, Lewis admits to $183.85 in sales of Nipple Huggers which were shipped to Florida addresses, and that those sales accounted for approximately 6% of gross worldwide sales through the UnderTheHoode website between November 2006 and December 2009. (*Id.* ¶¶ 16, 17.) Further, Lewis admits that she has sold a variety of products to thirty-nine customers with shipping addresses in Florida totaling $1,548.15. (*Id.* ¶ 18.)

Lewis' Motion to Dismiss concedes that the allegations in Croft's Complaint establish specific personal jurisdiction under Florida's long-arm statute (FLA. STAT. § 48.193) because patent infringement constitutes a tortious act. (Dkt. No. 22 at 8.) However, Lewis argues that subjecting her to this Court's jurisdiction would violate her Constitutional right to due process. Lewis argues she has not had sufficient contacts with Florida, and that subjecting her to jurisdiction in Florida would violate traditional notions of justice and fair play. (*Id*. at 9-10.)

Croft argues that Lewis had a sufficient number of contacts with Florida over a three-year period, and purposefully availed herself to the Florida market. (Dkt. No. 23 at 5-6.) Additionally, Croft argues that the UnderTheHoode website's interactive nature and availability

3

to Florida residents provides support for finding both general and specific personal jurisdiction. (*Id.* at 11-13.)

**II.** *Applicable Legal Standards*

Before it may exercise personal jurisdiction over a nonresident defendant, the Court must determine (1) whether the forum state's long-arm statute permits service of process and (2) whether assertion of personal jurisdiction violates Federal due process. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009) (citations omitted).[3]

A plaintiff seeking to assert jurisdiction over a nonresident defendant need only make a prima facie showing of jurisdiction where the parties have not conducted discovery. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328-29 (Fed. Cir. 2008). Additionally, the court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in plaintiff's favor. *Id.* at 1329.

**III.** *Analysis and Discussion*

**A. Whether Florida's Long-Arm Statute is Satisfied.**

Florida's long-arm statute is satisfied when a defendant, or its agent, commits a tortious act within Florida. *See* FLA. STAT. § 48.193(1)(b). The Complaint alleges that Lewis committed patent and trademark infringement in Florida. (Dkt. No. 1.) "Patent infringement is a tort." *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1365 (Fed. Cir. 2008). "[T]o sell an infringing article to a buyer in [another state] is to commit a tort there (though not necessarily only there)."

---

[3] Because this case is intimately related to substantive patent law, the Court is obligated to apply Federal Circuit law in determining whether to exercise jurisdiction over an out-of-state accused infringer. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564-65 (Fed. Cir. 1994).

*N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994). Thus, the allegations of patent infringement in Croft's Complaint satisfy Florida's long-arm statute. *See also Kemin Foods, L.C. v. Omniactive Health Techs., Inc.*, 654 F. Supp. 2d 1328, 1333-34 (M.D. Fla. 2009) (finding plaintiff's contention that defendants sold infringing products in Florida established jurisdiction under Florida's long-arm statute). Moreover, Lewis concedes that Florida's long-arm statute is satisfied in regard to specific personal jurisdiction. (Dkt. No. 22 at 8.) Therefore, the Court finds that personal jurisdiction exists under Florida's long-arm statute and next determines whether jurisdiction over Lewis comports with Constitutional due process.

### B. Whether Jurisdiction Over Lewis Comports With Due Process.

Due process permits a federal court to exercise personal jurisdiction over a nonresident defendant if the nonresident defendant has sufficient minimum contacts with the forum state such that the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Under the "minimum contacts" test, a defendant may be subject to either "general jurisdiction" or "specific jurisdiction." When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State is said to be exercising general jurisdiction over the defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n. 9 (1984). A forum may assert specific jurisdiction over a nonresident defendant when the alleged injury arises out of or relates to actions by the defendant that are purposefully directed toward forum residents, and where jurisdiction would not otherwise offend fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

### 1. General Jurisdiction.

A forum has general jurisdiction over a defendant when the defendant has contacts with the forum state that qualify as "continuous and systematic contacts," even when the cause of action has no relation to those contacts. *Helicopteros*, 466 U.S. at 414-16. Croft argues that general jurisdiction exists over Lewis. Croft cites admissions by Lewis that she derived sales and profits from Florida residents on at least thirty-nine occasions over a three-year span, and that at least 6% of her worldwide sales of Nipple Huggers-related products were made to Florida residents. (Dkt. No. 23 at 6.) Croft also points to Lewis' on-line advertising and on-line sales made through her website UnderTheHoode.com. (*Id.* at 11.) Lewis argues that nine sales[4] over a three-year period should not be considered "continuous and systematic" and that her website is accessible to residents of any state and is not specifically directed at Florida. (Dkt. No. 22 at 20-22.)

The Court agrees with Lewis and finds that general jurisdiction does not exist over her. Lewis made ten sales of Nipple Huggers-related products to Florida residents, presumably through her website, over a three-year span. Overall, Lewis sold a variety of UnderTheHoode products to thirty-nine customers with shipping addresses in Florida. (Lewis Decl. ¶ 18.) Besides those sales, there are no other contacts that Lewis had with Florida which would bring her within the "general jurisdiction" category of personal jurisdiction. Lewis is not licensed to do business in Florida, nor has she ever met with clients in Florida or attended trade shows in

---

[4] The Court notes, based upon its own review of the record, that *ten* sales were made to Florida residents rather than nine (excluding the sale to Mr. Wallace Holland). It appears Dkt. No. 22, Ex. A, does not account for the sale to Ms. Noreen Quinn on December 17, 2006.

6

Florida. (*Id.* ¶¶ 2, 5, 14.) Nor does Lewis have any business operations in Florida or does she maintain property or bank accounts in Florida. (*Id.* ¶¶ 2, 3, 6, 15.) Finally, Lewis' website and advertisements do not target Florida residents or provide preferential rates to Florida customers. (*Id.* ¶¶ 8, 20, 21, 22.)

The standard for establishing general jurisdiction is fairly high. Here, the number of sales by Lewis to Florida residents is somewhat significant, but they are a classic case of sporadic and insubstantial contacts, and are not sufficient to qualify as "continuous and systematic general business contacts." *See Autogenomics*, 566 F.3d at 1017-1018 (finding no general jurisdiction over defendant who lacked a physical presence and license to do business in California, despite the fact it met with customers there at conferences on four occasions over five years).

General jurisdiction does not exist even considering Lewis' website in combination with her sales to Florida residents. The Federal Circuit has not decided whether a website, by itself, is sufficient to establish general jurisdiction. *See Trintec Indus., Inc. v. Pedre Promotional Prods.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005). But the Federal Circuit has held that the ability of forum residents to access a defendants' website, which is available to all customers throughout the country, does not by itself demonstrate a persistent course of conduct sufficient to find general jurisdiction. *Campbell Pet Co. v. Miale*, 542 F.3d 879, 883 (Fed. Cir. 2008). The defendant in *Campbell Pet* made twelve sales over a seven-year period to Washington residents. *Id.* at 881. The defendants' website advertised its products and had the capability to take orders, but none of the Washington sales were alleged to have been made via its website. *Id.*

Here, Lewis clearly does business with Florida residents over the Internet. Over a three-year period Lewis sold ten Nipple Huggers and various other products through her website to Florida residents, totaling $1548.15 in revenue. However, Croft presents no evidence and makes no allegations that Lewis' website specifically targeted Florida residents. Indeed, the Complaint merely states that Lewis' website "is available and accessible within the Middle District of Florida." (Dkt. No. 1 ¶ 6.) Considering the sporadic and insubstantial nature of Lewis' sales which were made over a website not directed specifically at Florida residents, the Court finds that general jurisdiction does not exist over Lewis.[5] *See Campbell Pet*, 542 F.3d at 883-84 (holding that twelve sales to California residents totaling about $14,000 in revenue, in combination with a generally accessible website, and defendant's attendance at conferences and mailing of a cease-and-desist letter to California, were insufficient to give rise to general jurisdiction).

### 2. Specific Jurisdiction.

Even where general jurisdiction is not available, specific jurisdiction may be exercised by a district court in the forum state if the state's long-arm statute would permit service of process on the defendant under the circumstances of the case, and if due process considerations would permit the exercise of personal jurisdiction over the defendant under those circumstances. *Campbell Pet*, 542 F.3d at 884. Lewis concedes that Florida's long-arm statute applies in this case. With respect to specific jurisdiction due process considerations in the context of patent

---

[5] For the same reasons, general jurisdiction does not exist under Florida's long-arm statute. *See* FLA. STAT. § 48.193(2) ("A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.")

infringement litigation, the Federal Circuit employs a three-prong test to determine whether: (1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to those activities; and (3) assertion of personal jurisdiction is reasonable and fair. *Avocent*, 552 F.3d at 1332.

### a. Lewis Purposefully Directed Her Activities at Residents of Florida.

Under the Federal Circuit's three-prong test, a court may properly assert specific jurisdiction, even if the contacts are isolated and sporadic, so long as the cause of action arises out of or relates to those contacts. *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009) (*citing Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed.Cir. 2003). Indeed, a "substantial connection" with a forum arising out of a "single act can support jurisdiction." *Id.* (*quoting Burger King*, 471 U.S. at 475 n. 18) (citations omitted).

In this case Lewis had sufficient contacts with Florida such that the Court finds she purposefully directed her activities toward Florida. The Court acknowledges that Lewis does not and has not had any physical ties to Florida. But jurisdiction may not be avoided merely because Lewis did not physically enter Florida. *See Burger King*, 471 U.S. at 476. Lewis made at least ten sales of Nipple Huggers-related products to Florida residents over a three-year period. Overall, Lewis made at least thirty-nine sales to Florida residents during that same time period. Importantly, there was not an attenuated chain of distribution involved here such that Lewis did not expect her products to end up in Florida. *Cf. World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980) (finding no personal jurisdiction because the manufacturer put its

9

product into the "stream of commerce" with no expectation that it would ever enter the forum State). Indeed, as the sole representative of UnderTheHoode.com, Lewis admitted shipping at least thirty-nine products directly to customers with Florida addresses. (Lewis Decl. ¶ 18.) Although Lewis attempts to minimize the extent of her sales to Florida residents, the Court is not persuaded by her arguments. In fact, residents of Florida bought more Nipple Huggers-related products than any other state except Texas, (*see* Dkt. No. 22, Ex. B.), and at least 6% of Lewis' worldwide sales of Nipple Huggers-related products were made to Florida residents. (*Id.*) While Lewis' sales to Florida residents may not have been systematic and continuous, they were also not random, fortuitous, or isolated. *See F.A.C.E. Trading, Inc. v. Famiano*, No. 8:05-CV-1740, 2006 WL 571723, at *6 (M.D. Fla. 2006) (stating defendant could not claim its contact with Florida was merely incidental where it shipped its products directly to Florida for further distribution to consumers).

Lewis relies on *Instabook Corp. v. Instantpublisher.com*,[6] in arguing that her minimal sales over the Internet show she did not have fair warning that she would be haled into court in Florida. (Dkt. No. 22 at 14-15.) In *Instabook* the defendant made two sales to Florida residents through its website, but it conditioned the use of its website on an agreement which provided for exclusive jurisdiction in Tennessee. *Instabook*, 469 F. Supp. 2d at 1126. The Court found that the defendant could not reasonably have anticipated being haled into Florida based on its two sales to Florida residents when it had conditioned the use of its website on an agreement to litigate in Tennessee. *Id.* at 1127. This case is readily distinguishable from *Instabook* because

---

[6] 469 F. Supp. 2d 1120 (M.D. Fla. 2006).

Lewis never conditioned the use of her website on an agreement to litigate in Arizona or elsewhere. Additionally, Lewis had at least thirty-nine contacts with Florida over three years, rather than only two isolated sales. Thus, the Court is not persuaded by *Instabook*. As the Supreme Court stated in *Volkswagen*:

> "if the sale of a product of a manufacturer . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer . . . to serve, directly *or indirectly*, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has [] been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce *with the expectation that they will be purchased by consumers* in the forum State.

*Id.* at 297-298 (emphasis added). In this case, at the very least Lewis indirectly served the Florida market through her website and it would not be unreasonable to subject her to suit in Florida for her alleged tortious acts of infringement in Florida which allegedly caused injury to Croft. Moreover, the Court readily infers from Lewis' course of conduct over three years that she expected Florida residents to make purchases through her website even though she did not specifically target those residents. Indeed, UnderTheHoode.com is an interactive, commercial transaction-oriented website. Lewis admittedly conducted numerous business transactions through her website with Florida residents, and shipped products directly to those residents. (Lewis Decl. ¶¶ 16-18.) It is apparent to the Court that the mere availability of Lewis' website to residents of Florida is by itself insufficient to meet the Constitutional requirements for personal jurisdiction over her. *See Trintec*, 395 F.3d at 1281 (implying that more than the mere availability of a website to a particular forum is required when the website is accessible to all customers throughout the country). However, in this case that is not an issue as Lewis' website

11

was more than merely available to Florida residents. In this case Lewis knowingly and repeatedly engaged in business transactions with Florida residents through her website over the course of three years. Perhaps if Lewis had sold only one product through her website to a Florida resident, it would be plausible that such a sale was random or fortuitous. But here there were at least ten transactions. Lewis' conduct strongly implies she purposefully availed herself to the benefits and privileges of doing business with Florida residents. Therefore, the Court finds that the first prong is satisfied because Lewis purposefully directed her activities to residents of Florida and she could reasonably anticipate being haled into court there. *See F.A.C.E. Trading,* 2006 WL 571723, at *6.

### b. Croft's Claims Arise Out of or Relate to Her Activities With Florida.

The Court also finds that the contacts Lewis had with Florida are intimately connected with Croft's claims of patent and trademark infringement. Lewis maintains that only one of the Nipple Huggers products sold to a Florida resident allegedly infringe the '061 patent. Yet Lewis does not deny that Croft's claim of patent infringement arises out of Lewis' activities in Florida. Croft's Complaint alleges that Lewis, makes, uses, or offers for sale products that are covered by at least one of the claims of the '061 patent. (Dkt. No. 1 ¶ 8.) Additionally, Croft alleges that Lewis sells and distributes infringing products to Florida residents through Lewis' website to the commercial detriment of Croft. (*Id.* ¶ 10-11.) Croft's claim of patent infringement, therefore, arises directly out of Lewis' sales of infringing products to Florida residents that are advertised on Lewis' website. *Cf. Synthes*, 563 F.3d at 1298 (finding claim of patent infringement arose

directly out of defendant's action of bringing allegedly infringing locking bone plates into the United States and displaying them at a trade show to generate interest).

Additionally, Croft's claim for trademark infringement of the Nipple Hugger mark is intimately connected with each of the ten Nipple Huggers products sold to Florida residents by Lewis. Lewis' reliance on *Dynetech Corp. v. Leonard Fitness, Inc.*,[7] in arguing for lack of purposeful availment as to Croft's trademark claim is misplaced. The Court in *Dynetech* merely found that the defendants' website, which allegedly infringed the plaintiff's trademark, did not provide a sufficient basis for personal jurisdiction where there were no other contacts with Florida. *Dynetech*, 523 F. Supp. 2d at 1347-48. Here, Lewis shipped at least ten Nipple Huggers products to Florida which allegedly infringed Croft's Nipple Hugger trademark. Thus, in addition to Lewis' website, there are ten contacts over three years with Florida residents on which Croft's cause of action for trademark infringement is based and intimately connected with. Therefore, the Court finds that the second prong of the Federal Circuit's test is also met.

### c. Exercising Personal Jurisdiction Over Lewis Would be Reasonable and Fair.

To determine whether exercising personal jurisdiction would comport with "fair play and substantial justice," the Court must consider five factors: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477. With respect to this last prong, the

---

[7] 523 F. Supp. 2d 1344 (M.D. Fla. 2007).

burden of proof is on the defendant, who must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable despite the presence of minimum contacts. *Avocent*, 552 F.3d at 1332.

Lewis argues maintenance of the suit in Florida would be unfair because she would suffer an enormous burden if forced to litigate here. (Dkt. No. 22 at 19.) She argues that she has limited resources and that Florida has little interest in hearing the dispute. (*Id.*) Croft asserts that she would likewise face a great burden having to litigate elsewhere. (Dkt. No. 23 at 7.) Further, Croft contends Florida has an interest in protecting its citizens from intentional torts (such as infringement) when those acts are carried out within its borders. (*Id.*)

The Court finds that application of the five factors establishes that exercising personal jurisdiction in this case is both reasonable and fair. The burden of litigation in a remote district on Lewis might be considerable, but Croft would face a similar burden if forced to litigate elsewhere, as all of her records and witnesses are located in the Middle District of Florida. *See Campbell Pet*, 542 F.3d at 887-88 (finding burden of litigation in a remote district similar for plaintiff and defendants). Additionally, while the amounts at stake in this litigation may be relatively small, Florida undoubtedly has an interest in discouraging injuries that occur within the state, including patent and trademark infringement. Indeed, Florida residents purchased more Nipple Huggers-related products than the residents in every other state, except Texas. Resolution of this dispute will affect not only Florida-based Sheer Delight, but also Florida residents who have an interest in obtaining non-infringing products. *See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1367 (Fed. Cir. 2006) . The fourth and fifth factors are

concerned with the efficiency of a resolution to the controversy and the potential clash of substantive social policies between competing fora. *Synthes*, 563 F.3d at 1300. Neither party addresses these factors in any detail, although Lewis suggests briefly that Arizona would be the better forum. As to the fourth factor, the Court has no reason to believe that Arizona would be any more efficient in the resolution of this case.[8] As to the fifth factor, the "shared interest of the several States in furthering fundamental substantive social policies," is not likely to be affected by this patent and trademark dispute. In sum, the Court finds each of the *Burger King* factors are relatively neutral, except as to the second factor (Florida's interest in hearing the case) which favors Croft. Even assuming that the second factor is also neutral, Lewis has not carried her burden to present a compelling case that jurisdiction would be unreasonable in this case.

**IV.** *Conclusion*

The Court finds that all three prongs of the Federal Circuit's test for specific jurisdiction are established. Lewis had sufficient contacts with Florida such that the Court finds she purposefully directed her activities at Florida residents. Additionally, the Court finds that Croft's claims for trademark and patent infringement arise out of Lewis' contacts with Florida residents. Finally, exercising jurisdiction over Lewis in Florida would be reasonable and fair. Therefore, because Florida's long-arm statute applies in this case and Lewis' Constitutional due process

---

[8] Indeed, a 2009 Patent Litigation Study by PricewaterhouseCoopers listed the Florida Middle District Court as the fourth fastest in terms of the median time-to-trial. *See* Aron Levky et al., *2009 Patent Litigation Study*, August 2009, http://www.pwc.com/us/en/forensic-services/publications/assets/2009-patent-litigation-study.pdf, Chart 7C at 17.

rights would not be offended, the Court finds that specific jurisdiction exists over Lewis in Florida.

For the foregoing reasons it is **RECOMMENDED** that Defendant Lewis' Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 22) be **DENIED**.

**IT IS SO REPORTED** at Tampa, Florida, this 1st day of April, 2010.

ANTHONY E. PORCELLI
United States Magistrate Judge

### NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) (*en banc).*

**Copies furnished to:**

Honorable James D. Whittemore

Counsel of Record